The decision below is signed as a decision of the court.

Signed: July 01, 2007.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| JAMES GREGORY BARNES, *et al.*, | ) ) ) | Case No. 04-01124 (Chapter 7) |
| | ) | **For Publication in West's** |
| Debtors. | ) | **Bankruptcy Reporter** |

MEMORANDUM DECISION RE MOTION FOR RULE 2004 EXAMINATION

ColomboBank FSB (the "Bank") has filed a motion (Docket Entry ("DE") No. 128) to examine the debtor, James Gregory Barnes, pursuant to Fed. R. Bankr. P. 2004. The court will deny the motion for the following reasons.

I

In the Bank's adversary proceeding against Barnes, Adv. Pro. No. 06-10028, the court previously entered an order approving the parties' settlement and dismissing the adversary proceeding. Approval of the settlement was required under LBR 7041-1(a) because the proceeding was one under 11 U.S.C. § 727 to deny or revoke a discharge (relief, that if granted, would benefit all creditors), and the adversary proceeding was being dismissed instead pursuant to an agreement that benefitted only the Bank.

The trustee and creditors did not object to the settlement agreement and dismissal of the adversary proceeding, and, accordingly, the court approved the same, but the order did not impose the obligations as a judgment of the court.  The parties' settlement agreement provided:

> [A]ll sums being held by the employer of the Debtor and the Debtor's spouse on account of a garnishment by the Plaintiff [shall] be released to the Plaintiff, and [] the Debtor [shall] pay $13,000 in six equal monthly installments as a partial payment of the legal fees of the Plaintiff in this matter.

The Bank now seeks a Rule 2004 examination of Barnes because he has defaulted on his obligations under the settlement agreement. The trustee administering the debtors' bankruptcy estate has filed a proposed final report, which is awaiting consideration by the court after another creditor completes a Rule 2004 examination into whether Barnes is receiving any death benefits that are property of the estate.

II

As explored below, the proposed examination would gather information having no relation to, or even slight impact on, any matters over which this court would have jurisdiction. Accordingly, Rule 2004 may not be employed by the Bank.

A.

The examination that the Bank desires to take does not relate to the administration of the bankruptcy estate or to rights, obligations, or liabilities of the debtor under the

2

Bankruptcy Code. It does not entail inquiry into an administrative claim against the bankruptcy estate. Instead, it is an attempt to gather information pertinent to the breach of the parties' settlement agreement and to obtain information regarding assets that might be a source for Barnes' meeting his obligations under that agreement. (The Bank does not contend that it seeks an examination of the debtor for the purpose of uncovering assets that the trustee may administer.)

Rule 2004(b) provides that a Rule 2004 examination

> may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge.

Although the literal language of Rule 2004 would seem to permit the Bank's inquiry, Rule 2004 must be circumscribed by the jurisdictional limits imposed upon a court in a bankruptcy case.

B.

Under 28 U.S.C. § 1334(a), the court has jurisdiction over the bankruptcy case itself which was commenced by the debtor's filing of a petition under 11 U.S.C. § 301, but the Bank's breach of contract claims would not constitute a bankruptcy case and, instead, would be a proceeding within the case. Under 28 U.S.C. § 1334(b), the court has jurisdiction "of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Rule 2004 examinations may be pursued with respect

3

to such potential proceedings (for example, collection of property of the estate by the trustee, objections to exemptions, dischargeability issues, and fixing prepetition and administrative claims against the estate).

### 1. "Arising Under" Jurisdiction

The desired examination here does not pertain to a potential cause of action "arising under title 11." For example, this is not an inquiry into whether a nondischargeability proceeding could be brought under 11 U.S.C. § 523. Once the adversary proceeding was dismissed, the claim for revocation of discharge asserted in that proceeding, a claim arising under the Bankruptcy Code, no longer conferred a basis for jurisdiction. The potential claim at issue, for breach of contract, arises instead under state law.

### 2. "Related To" Jurisdiction

Nor is there "related to" jurisdiction under § 1334(b). The inquiries will not lead to any proceeding having an impact on the administration of the bankruptcy estate: the recoveries would not be by the estate, and the claims are not against the estate, and thus the inquiries are not related to the bankruptcy case. See Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984); Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.), 72 F.3d 1171 (3d Cir. 1996) (bankruptcy court lacked jurisdiction over damage claims asserted against bankruptcy trustee in his

individual capacity for failing to turn over to bailor property he held as bailee).

### 3. "Arising In" Jurisdiction

Nor is there "arising in" jurisdiction under § 1334(b). Two points must be emphasized in this regard.

First, that the debtor's breaches occurred while the bankruptcy case was still pending is irrelevant. The debtor's alleged breaches of the parties' contract just as easily could have arisen long after the bankruptcy case was closed. It is only a fortuity that the bankruptcy trustee had not yet completed the administration of the estate and requested the entry of an order closing the case when the breaches occurred. The coincidence of the breach of contract occurring when the bankruptcy case was open is insufficient to characterize the breach of contract claim as "arising in" the bankruptcy case.

Second, that the parties' settlement agreement arose in the bankruptcy case is similarly irrelevant. The approval of the contract was a proceeding arising in the bankruptcy case under LBR 7041-1(a) to approve a settlement of the adversary proceeding that arose under 11 U.S.C. § 707. Once the parties obtained approval, the result was a postpetition contract between the parties resolving the Bank's right to collect its claims from the debtor. That proceeding was completely concluded and the parties' performance under the settlement agreement has nothing

to do with wrapping up the administration of the case.  The performance of the agreement is not taking place in the bankruptcy case.  Accordingly, the Bank's claims for breach of the contract arose not in the bankruptcy case but by reason of conduct outside of the bankruptcy case, the debtor's failure to comply with an agreement whose required performance had nothing to do with the administration of the case.

This demonstrates that the Bank's claims for breach of the contract exist outside of the bankruptcy case, and thus do not "arise in" the bankruptcy case.  They are not of a nature that could arise only in the bankruptcy case.  As stated in Wood v. Wood (In re Wood), 825 F.2d 90, 97 (5th Cir. 1987):

> The meaning of "arising in" proceedings . . . seems to be a reference to those "administrative" matters that arise only in bankruptcy cases.  In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

See also Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.), 935 F.2d 1071, 1076 (9th Cir. 1991) (claim did not "arise in a case under title 11 because it is not a cause of action . . . that only arises in title 11 cases").  The claim must have something to do with concluding the administration of the case if it is to be one "arising in" the case, and the debtor's performance of the contract here had nothing to do with concluding the administration of the case.  See Torkelsen v.

Maggio (In re Guild and Gallery Plus, Inc.), 72 F.3d at 1178.[1]

This case is distinguishable from those in which "arising in" jurisdiction was found to exist with respect to breach of a postpetition contract that the trustee (or a debtor in possession exercising a trustee's powers) entered into during the bankruptcy case.  See, e.g., American Freight Sys., Inc. v. Blymer Engineers, Inc. (In re American Freight Sys., Inc.), 236 B.R. 47, (Bankr. D. Kan. 1999); Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 168 (1st Cir. 1987) (holding that debtor-in-possession's postpetition contract dispute was a core proceeding, thus implicitly holding that for purposes of 28 U.S.C. § 157(b)(1), the proceeding was one "arising in" the case, and that, accordingly, for purposes of § 1334(b) as well, the proceeding was one "arising in" the case). Because the debtor did not serve as a debtor in possession, the contract was not one that was made to facilitate the liquidation or reorganization of the estate.  Unlike an administrative expense, which must be recovered under 11 U.S.C. § 503(a) via a request for payment from estate assets, the Bank's claims for

---

[1] In Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.), 72 F.3d at 1178, the trustee was bailee of non-estate property by reason of being a trustee stepping into shoes of debtor who on the petition date was the bailee with respect to the property.  A claim against bankruptcy trustee *in his individual capacity* for breach of his duties as a bailee was held not to be a claim "arising in" the case.  The claim was not an administrative matter relating to wrapping up the case.

7

breach of the settlement agreement are not against estate assets. It is a claim against the debtor which will survive any closing of the bankruptcy case, and will be enforceable outside of the bankruptcy court.

 \* \* \* \* \* \* \* \* \* \* \*

In light of the foregoing, there would be no jurisdiction over the Bank's breach of contract claims under § 1334(b). The remaining possible source of jurisdiction is ancillary jurisdiction, the issue next addressed.

C.

The court had jurisdiction under § 1334(b) to enter the order approving the settlement agreement, and the Bank might argue that the court has ancillary jurisdiction to enforce that order as recognized by the authorization in 11 U.S.C. § 105(a) that the court may take action "necessary or appropriate to enforce or implement court orders . . . ."

Even if the court has ancillary jurisdiction to enforce its orders, ancillary jurisdiction does not exist to enforce the settlement agreement. The order approving the settlement agreement did not impose obligations. Instead, it simply approved the settlement agreement without reducing the parties' obligations under the settlement agreement to a judgment. An order's approval of a settlement agreement does not make the terms of the settlement agreement part of the order. <u>Kokkonen v.</u>

Guardian Life Ins. Co. of America, 511 U.S. 375, 381 (1994); In re Phar-Mor, Inc. Securities Litigation, 172 F.3d 270, 274-75 (3d Cir. 1999).  Under Kokkonen, 511 U.S. at 381-82, a court has no ancillary jurisdiction to enforce a settlement agreement when the order of dismissal did not reduce the settlement agreement to a judgment or expressly retain jurisdiction over the enforcement of the settlement agreement.  Under Kokkonen, 511 U.S. at 382, the Bank nevertheless may rely on any independent basis for federal jurisdiction, but as already demonstrated, the jurisdictional statute applicable to bankruptcy courts, 28 U.S.C. § 1334(b), would not apply to the Bank's breach of contract claims.

D.

Accordingly, the court would have neither jurisdiction under § 1334(b) nor ancillary jurisdiction to address the breach of contract claims, and a Rule 2004 examination seeking information pertaining to enforcement of the contract is thus inappropriate.[2]

III

Even if the Bank could obtain a judgment from this court enforcing the settlement agreement, the rights the Bank seeks to

---

[2] Because the court is denying the Bank's motion on an alternative ground as well, this decision does not preclude the Bank from pursuing its breach of contract claims, and enforcement of those claims, in this court if it can demonstrate that the court's analysis is erroneous regarding lack of jurisdiction over those claims.  Neither party has addressed the Kokkonen issue.  The debtor even viewed the Bank's motion as an effort to collect a judgment (as though the order of dismissal had reduced the settlement agreement to a judgment).  See n.3, infra.

9

enforce arise out of an adversary proceeding, and specific adversary proceeding rules govern the discovery of assets to enforce a judgment.[3]  Once an adversary proceeding is pending, discovery related thereto must be conducted pursuant to the Federal Rules of Civil Procedure, and Rule 2004, a pre-litigation tool, is displaced.  See In re Enron Corp., 281 B.R. 836, 840-41 (Bankr. S.D.N.Y. 2002); In re The Bennett Funding Group, Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996); In re Szadkowski, 198 B.R. 140, 142 (Bankr. D. Md. 1996); In re Valley Forge Plaza Assocs., 109 B.R. 669, 675 (Bankr. E.D. Pa. 1990).  Specifically, Rule 69 of the Federal Rules of Civil Procedure (made applicable by Fed. R. Bankr. P. 7069), contemplates that discovery in an adversary proceeding to enforce a judgment shall be conducted under that rule, not Rule 2004.

Moreover, the Bank does not yet have a judgment, and prejudgment discovery into assets from which a prospective judgment may be collected is generally not allowed in civil actions (an adversary proceeding being the analog of a civil

---

[3] The debtor argues:

> This is an issue of an attempt to collect certain funds on a judgment. The Motion has no basis under Bankruptcy Rule 2004 as it does not involve property of the bankruptcy estate, claims against the bankruptcy estate or any other matter that would fall within the jurisdiction of the Court pursuant to Rule 2004.

(Opp'n ¶ 13.)

action in the district court).  The proposition seems so obvious that it is not surprising that my limited research found no case law addressing the issue.  I have found only one exception to the general rule that prejudgment discovery into assets available to collect a judgment is unavailable, namely, 28 U.S.C. § 3015(a), a provision allowing discovery by the Government in proceedings related to prejudgment remedies.  See United States v. Teeven, Civ. A. No. 92-418 LON, 1992 WL 683682 (D. Del. Oct. 27, 1992).

IV

An order follows denying the Bank's motion and the debtor's request for attorney's fees in opposing the motion.[4]

[Signed and dated above.]

Copies to: Debtor; Debtor's attorney; Stephen Nichols, Esq.; Office of United States Trustee.

---

[4] The motion alleges facts suggesting the debtor engaged in serious misconduct in not complying with the settlement agreement.  In light of § 105(a), permitting the court to enforce its orders, it is understandable that the Bank could reasonably, albeit mistakenly, view Rule 2004 as a basis for inquiry into enforcement of the debtor's obligations resulting from the court's order approving the parties' settlement agreement.  Attorney's fees are inappropriate, and, in any event, have not been sought in accordance with the procedures of Fed. R. Bankr. P. 9011.

11